SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2018 ME 81
Docket:        Som-17-352
Argued:        March 7, 2018
Decided:       June 19, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:      MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Dissent:       ALEXANDER. J.

AVIS RENT A CAR SYSTEM, LLC

v.

DARRON BURRILL


HUMPHREY, J.

[¶1]  Darron Burrill appeals from a partial summary judgment entered in favor of Avis Rent A Car System, LLC, on Avis's claim for breach of contract in the District Court (Skowhegan).[1]  Burrill challenges the court's (*Fowle, J.*) determination, issued as a partial summary judgment, that he is liable to Avis for breach of contract and the court's (*E. Walker, J.*) determinations of damages and attorney fees, awarded after an evidentiary hearing.  Avis cross-appeals, challenging the court's failure to award it pre- and post-judgment interest.  We affirm the partial summary judgment as to

---

[1]  The caption of the court's order on Avis's motion for partial summary judgment lists the District Court location as Augusta while the text of the order states that the hearing on the motion was held at the District Court in Skowhegan.  Because this matter was docketed as a Skowhegan case, we assume that the reference to Augusta was a clerical error.

liability for breach of contract but vacate the award of damages and remand for further proceedings.

## I. BACKGROUND

[¶2] The following facts relating to liability are taken from the parties' statements of material fact and reflect the record as viewed in the light most favorable to Burrill as the nonprevailing party. *See Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 25, 133 A.3d 1021. Facts relating to Avis's alleged damages are as found by the court.

[¶3] On November 20, 2012, Burrill, a Maine resident, rented a 2012 Ford Mustang from an Avis location in Las Vegas, Nevada. Burrill executed a Rental Agreement and Addendum and declined the loss damage waiver protection that was offered to him. By declining the loss damage waiver, Burrill agreed to be responsible for "all loss of or damage to the car regardless of cause, or who, or what caused it." That same day, the vehicle was damaged when it was involved in an accident in Las Vegas.

[¶4] According to Avis, the accident caused damages to the vehicle totaling $15,342.57. Avis sent demands for payment to Burrill on January 16, 2013, April 3, 2013, and August 14, 2014, but Burrill failed or refused to pay.

[¶5]   Avis filed a complaint against Burrill in the District Court on July 20, 2015, alleging breach of contract and negligence and seeking damages.  On March 31, 2016, after discovery was concluded, Avis moved for partial summary judgment to establish liability on the claim for breach of contract.   The court (*Fowle, J.*) held oral argument on the motion on September 29, 2016.

[¶6]  In its order granting Avis's motion for partial summary judgment, the court noted the parties' agreement that the case is controlled by Nevada substantive law and Maine procedural law.[2]  The court then determined that there were no genuine issues of material fact that (1) the parties entered into a valid and enforceable rental contract; (2) Burrill breached that contract; and (3) "although the parties do dispute the extent of the damages sustained during the course of the accident . . . damages did indeed occur."  As a result, the court concluded that there were no genuine issues of material fact as to the elements of the claim for breach of contract and that Avis was entitled to partial summary judgment on the issue of liability as a matter of law.  The

---

[2]   The rental agreement did not include a choice-of-law provision, but because the rental agreement was executed in Nevada and the accident took place in Nevada, Nevada substantive law applied.  *See* Restatement (Second) of Conflict of Laws § 188 (Am. Law Inst. 1971); *see also State Farm Mut. Auto Ins. Co. v. Koshy*, 2010 ME 44, ¶ 46, 995 A.2d 651.

4

court granted the motion on October 5, 2016, and ordered a hearing on damages.[3]

[¶7] In dispute at the damages hearing on May 18, 2017, was whether the affidavit of damages executed by an Avis claims examiner included inadmissible hearsay. Several documents were attached to the affidavit: the rental agreement; a vehicle valuation report prepared for Avis by J.D. Power and Associates; a bill for towing the damaged vehicle; and a record of the vehicle's salvage value. Burrill objected to the admission of the affidavit on the ground that, other than the rental agreement, the attachments were not "business records" pursuant to the hearsay exception in M.R. Evid. 803(6). At the hearing, the court (*E. Walker, J.*) accepted the affidavit with its attachments *de bene* and did not then rule on its admissibility. Avis then called a witness to testify about the amount of damages, but Burrill objected because the identity of the testifying witness had not been disclosed prior to the hearing. Because the witness Avis had previously identified to Burrill was unable to attend, Avis brought a different witness to the hearing. The court declined to accept the testimony of the witness present. Before the hearing concluded, Avis offered a repair estimate as evidence of damages if the court determined that the

---

[3] The day before the damages hearing, Avis moved to dismiss its negligence claim. The court granted the motion at the hearing.

attachments to the affidavit—specifically the vehicle valuation report—were inadmissible. Again, Burrill objected on the basis of hearsay, and again the court took the submission *de bene*, reserving its ruling on its admissibility.

[¶8] In its order on damages, the court determined that the attachments to the affidavit, although containing hearsay, satisfied the business records exception. The court devoted most of its discussion to the vehicle valuation report.[4] The report was not prepared by the affiant, but instead by a third party, J.D. Power and Associates. The valuation report purported to provide the market value of the vehicle prior to the loss by taking into account the value of comparable vehicles with similar mileage located in a similar geographic area, as well as any damage to the vehicle prior to the loss. The affiant certified that the report was kept in the regular course of Avis's business, that the affiant maintained the report as part of her duties as a claims examiner for Avis, and that it was made reasonably soon after the incident. The court determined that there was sufficient foundation for the admissibility of the affidavit and all of the attachments.

---

[4] The rental agreement stated that in the event of damage, the renter of the vehicle "will pay our estimated repair cost, or if, in our sole discretion, we determine to sell the car in its damaged condition, you will pay the difference between the car's retail fair market value before it was damaged and the sale proceeds."

[¶9]  Based on the information in the affidavit, the court concluded that the damages and fees claimed by Avis were reasonable and granted Avis its requested amount of $15,342.57.  It also granted Avis attorney fees totaling $5,985.00 and costs in the amount of $433.24.  The court declined to award Avis pre- or post-judgment interest.

[¶10]  Burrill appealed, challenging both the grant of Avis's motion for partial summary judgment and the award of damages.  Avis cross-appealed, challenging the court's failure to award it interest and costs in the amount it requested.

## II.  DISCUSSION

### A.    Breach of Contract

[¶11]   Burrill first challenges the court's grant of partial summary judgment on the issue of breach of contract.  "We review a trial court's grant of a summary judgment de novo, considering the evidence in the light most favorable to the nonprevailing party.  Summary judgment is properly granted if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Oceanic Inn*, 2016 ME 34, ¶ 25, 133 A.3d 1021 (citation omitted) (quotation marks omitted).

[¶12]  In order for a plaintiff to succeed in a claim for breach of contract, Nevada law requires a plaintiff to show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 408 (1865)).

[¶13]  The parties agreed on the following material facts: (1) Burrill rented a car from Avis on November 20, 2012; (2) the vehicle was damaged on November 20, 2012, when it was involved in an accident in Las Vegas; (3) in the rental agreement, Burrill had waived the loss damage protection and therefore agreed to be "responsible . . . for all loss of or damage to the car regardless of cause, or who, or what caused it"; (4) Avis sent Burrill several demands for payment of the alleged damages prior to the lawsuit; and (5) Burrill failed or refused to pay the amount demanded.  Because Burrill admitted that the car was damaged in an accident while it was rented under his name in a contractual arrangement that made him responsible for *any* damage to the car, and acknowledged that he refused to pay the amount demanded by Avis, there was no genuine issue of material fact that Burrill

8

breached the rental agreement by failing to pay Avis after the car was damaged.[5]

[¶14]   Because there were no genuine issues of material fact as to (1) the existence of a valid contract; (2) breach of that contract; and (3) some amount of damage as a result of the breach, we affirm the grant of Avis's motion for partial summary judgment as to liability.  *See* M.R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").

B.    Damages

[¶15]  Although there was no genuine issue of material fact that damage did indeed occur, the parties disputed the extent of the damages, prompting the court to order a hearing to determine the specific amount of damages. Burrill argues that the court erred and abused its discretion when it admitted, pursuant to the business records exception to the hearsay rule, the affidavit of

---

[5]  The trial court's analysis of the breach element focused largely on the question of whether Burrill's girlfriend, who the parties agree was driving the vehicle at the time of the accident, was an unauthorized driver according to the terms of the rental agreement.  The court rejected Burrill's contention that a conversation he allegedly had with an Avis clerk prior to renting the vehicle created genuine issues of material fact on the ground that evidence regarding the alleged conversation would be barred by the parol evidence rule. *See Klabacka v. Nelson*, 394 P.3d 940, 949 (Nev. 2017).  This remains Burrill's main argument on appeal.  It is a red herring, however.  Even if Burrill's girlfriend was an authorized driver, he is still contractually responsible for the damage to the car.  By failing to pay for the damage after Avis sent demands for payment, Burrill breached the contract.

an Avis representative and its attachments[6] as the sole evidence of the amount

of damages.  *See* M.R. Evid. 803(6).[7]

[¶16]   "When admission of evidence under the business records

exception to the hearsay rule is challenged, we review a trial court's

foundational findings to support admissibility for clear error and its ultimate

determination of admissibility for an abuse of discretion."  *JPMorgan Chase*

*Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 8, 156 A.3d 727 (quotation marks omitted).

"Business records are hearsay and therefore inadmissible pursuant to M.R.

Evid. 802 unless they meet the requirements of the business records

exception in M.R. Evid. 803(6)."  *KeyBank Nat'l Ass'n v. Estate of Quint*,

2017 ME 237, ¶ 14, 176 A.3d 717 (quotation marks omitted). Rule 803(6)

provides for the admissibility of a business record if

> (A)   The record was made at or near the time by—or from
> information transmitted by—someone with knowledge;
>
> (B)   The record was kept in the course of a regularly conducted
> activity of a business, organization, occupation, or calling, whether
> or not for profit;

---

[6] Burrill did not object to the admission of the rental agreement as a business record.

[7]  Although we apply Nevada contract law in this case, the local law of the forum governs the admissibility of evidence.  *See* Restatement (Second) of Conflict of Laws § 138; *see also Beaulieu v. Beaulieu*, 265 A.2d 610, 612 (Me. 1970); *Holyoke v. Estate of Holyoke*, 110 Me. 469, 477, 87 A. 40, 45 (Me. 1913).  We therefore apply the Maine Rules of Evidence when determining whether the business records exception applies to the attachments to the affidavit.

10

(C) Making the record was a regular practice of that activity;

(D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and

(E) Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[¶17] Here, the affiant sought to certify the business records by affidavit pursuant to Rules 803(6)(D) and 902(11). "[S]ubdivision 11 of Rule 902 makes it possible to lay the foundation for domestic business records without the need to call a live witness."[8] Field & Murray, *Maine Evidence* § 902.11 at 554 (6th ed. 2007).

[¶18] A person certifying the records pursuant to Rule 902(11) must still be a qualified witness, however. *See* M.R. Evid. 803(6), 902(11). As we have previously explained, "[a] qualified witness is one who was intimately

---

[8] M.R. Evid. 902(11) requires that the party seeking to certify business records in accordance with the rule must, before the trial or hearing, provide the adverse party with reasonable *written* notice of the intent to offer the record and must make the record and certification available for inspection. The purpose of the notice requirement is to ensure that the adverse party "has a fair opportunity to object to the authenticity of the record or on the basis of hearsay." *See* M.R. Evid. 902(11). There is no indication in the record whether notice was provided, but at the outset of the hearing, Burrill appeared to have been aware of Avis's plan to use the affidavit as proof of damages. Neither at the hearing or to us has Burrill objected to the affidavit based on lack of notice pursuant to M.R. 902(11); his objections were and are to the *attachments* to the affidavit. The rule provides that, "[i]n the event of an adverse party's objection to a record offered under this paragraph, the court may in the interests of justice refuse to accept the certification under this paragraph and require the party offering the record to provide appropriate foundation by other evidence." M.R. Evid. 902(11). The court did not do so at the hearing, and on appeal, Burrill does not challenge the court's failure to do so.

involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge" but who "need not be an employee of the record's creator." *Estate of Quint*, 2017 ME 237, ¶ 15, 176 A.3d 717 (quotation marks omitted). Where records are created by one business and then transmitted to another, the records will be admissible pursuant to M.R. Evid. 803(6) "if the foundational evidence from the receiving entity's employee is adequate to demonstrate that the employee had sufficient knowledge of both businesses' regular practices to demonstrate the reliability and trustworthiness of the information." *Beneficial Me. Inc. v. Carter*, 2011 ME 77, ¶ 13, 25 A.3d 96. In order to satisfy the requirements for the business records exception in the circumstances of this case, the witness must demonstrate knowledge that

- the producer of the record at issue employed regular business practices for creating and maintaining the records that were sufficiently accepted by the receiving business to allow reliance on the records by the receiving business;

- the producer of the record at issue employed regular business practices for transmitting them to the receiving business;

- by manual or electronic processes, the receiving business integrated the records into its own records and maintained them through regular business processes;

- the record at issue was, in fact, among the receiving business's own records; and

- the receiving business relied on these records in its day-to-day operations.

*Estate of Quint*, 2017 ME 237, ¶ 16, 176 A.3d 717 (quotation marks omitted).

[¶19]  Here, the certification of the Avis representative failed to provide the foundational predicate necessary for admission in evidence of the attached vehicle valuation report.  *See Deutsche Bank Nat'l Trust Co. v. Eddins*, 2018 ME 47, ¶ 13, 182 A.3d 1241.   The affiant certified that the vehicle valuation report was (1) a business record kept within Avis's claim file for the incident; (2) maintained as part of her duties as a claims examiner for Avis; (3) kept in the regular course of Avis's business and as part of its regularly conducted activity; and (4) made reasonably soon after the incident. However, because the affiant did not certify that she had any knowledge of J.D. Power and Associates's regular business practices, she failed to lay a proper foundation for the report pursuant to Rule 803(6), and the court abused its discretion by admitting the document in evidence.  *See id.* ¶ 14.  For these same reasons, the affiant failed to lay a proper foundation for the towing invoice and salvage proceeds documentation[9] as well.[10]

---

[9]  As Burrill points out, even if the salvage proceeds documentation were admissible, that record is meaningless without the market value of the vehicle provided in the vehicle valuation report.

[¶20]   Further, the affidavit was used to accomplish more than is contemplated by Rule 902(11).   In addition to Avis's attempt to lay the foundation for the admission of the attachments pursuant to Rule 803(6), the affidavit set forth the basis for other portions of the damages award as well. Not only did the affiant provide the amount allegedly due for the damage to the vehicle itself and the towing fee, she also listed a loss-of-use fee of $1,238.79, title and license fees in the amount of $101.80, and an administrative fee of $150.00.   Although the rental agreement stated that the signatory to the agreement would be required to pay for such fees in the event of damage to the vehicle, none of the other attachments purported to provide a basis for the specific amounts of those fees.   A certification submitted pursuant to Rule 902(11) can only lay the foundation for a business record; it is not a device to provide a basis for damages that are not included in the attached business records.[11]  *See* Field & Murray, *Maine Evidence* § 902.11 at

---

[10]   The affiant properly certified the rental agreement, however.   The rental agreement, unlike the vehicle valuation report, the towing invoice, and the salvage proceeds documentation, was prepared by Avis and meets the requirements of Rules 803(6) and 902(11).   Because it was not prepared by a third party and because the affiant laid the proper foundation pursuant to Rule 902(11), the rental agreement would be admissible.   Although the rental agreement informs the signatory of the types of fees and costs he or she will incur in the event of damage to or loss of the vehicle, it does not provide the specific amounts of those fees and costs.   The rental agreement alone therefore cannot provide a basis for the damages award sought by Avis.

[11]   Therefore, paragraphs 3 and 4 of the affidavit—which provide the total amount of damages suffered by Avis and a list of fees and costs that comprise that total—are not certifications pursuant to Rule 902(11) and are thus inadmissible hearsay.   *See* M.R. Evid. 801(c), 802.

554. Because Avis presented no admissible evidence[12] as to the amount of damages, it failed to prove it was entitled to the damages awarded to it.

[¶21]   According to Nevada contract law, when a plaintiff has established liability on behalf of the defendant in a claim for breach of contract but has failed to provide proof for the specific amount of damages, the plaintiff is entitled only to nominal damages.[13]  *See Gramanz v. T-Shirts & Souvenirs*, 894 P.2d 342, 347 (Nev. 1995); *Commercial Cabinet Co. v. Mort Wallin of Lake Tahoe*, 737 P.2d 515, 517 (Nev. 1987) (explaining that "[a] plaintiff who proves a right to damages without proving the amount as well is only entitled to nominal damages"); *Richardson*, 1 Nev. at 408. Because Avis established liability on behalf of Burrill but failed to prove the amount of actual damages, we vacate the court's award of damages and remand with instructions for the court to award Avis nominal damages in accordance with Nevada law.  Further, given that Avis will be entitled to an award of only

---

[12] Avis also offered a repair estimate at the conclusion of the damages hearing "if the fair market value report were to be rejected."  The repair estimate, like the fair market value report, was prepared by a third party.  There was no reference to the repair estimate in the affidavit of damages, nor did an Avis representative testify to any personal knowledge of the business practices of the company that prepared the repair estimate.  Therefore, the repair estimate would likely have been inadmissible hearsay as well.  *See Deutsche Bank Nat'l Trust Co. v. Eddins*, 2018 ME 47, ¶ 14, 182 A.3d 1241.

[13] Nominal damages are defined as "[a] trifling sum" and are "awarded for the infraction of a legal right, where the extent of the loss is not shown."  *Nominal Damages*, Black's Law Dictionary (10th ed. 2014) (quotation marks omitted).  "The obtaining of nominal damages will also, in many cases, entitle a plaintiff to costs."  *Id.* (quotation marks omitted).

nominal damages, we vacate the award of attorney fees to Avis to allow the court on remand to determine whether and to what extent attorney fees are proper in this case pursuant to the rental agreement.

[¶22]  Finally, we reach the issue raised in Avis's cross-appeal of whether the court erred when it failed to award it interest pursuant to the express terms of the rental agreement.  Because Nevada contract law applies in this case, Nevada law also governs the recovery of interest.  *See Roc-Century Assocs. v. Giunta*, 665 A.2d 220, 221 (Me. 1995); *see also* Restatement (Second) of Conflict of Laws § 207 & cmt. e (Am. Law Inst. 1971).  On remand, we instruct the court to apply Nevada law to determine whether and to what extent interest should be awarded to Avis.

The entry is:

> Partial summary judgment affirmed.  Award of damages vacated.  Remanded for further proceedings consistent with this opinion.

---

ALEXANDER, J., dissenting.

[¶23]  I concur in the Court's holding affirming the trial court's grant of partial summary judgment determining that Darron Burrill is liable for breach of contract as a result of his allowing an unauthorized driver to damage a

vehicle owned by Avis Rent a Car System, LLC.  With liability decided, the Court recognizes that there are no genuine issues of material fact that there was "some amount of damage as a result of the breach."  Court's Opinion ¶ 14.

[¶24]  The amount of damage, including some amounts that do not appear to be disputed, is established by the affidavit submitted by the Avis claims representative.  The Court references M.R. Evid. 902(11) to suggest that Avis may have given insufficient notice of its intention to rely on the affidavit to prove a point without calling a live witness.  Court's Opinion ¶ 17 n.8.  As the Court's opinion recognizes, Avis was prepared to present a live witness to support its damages evidence, but the live witness was, erroneously in my view, excluded by the trial court.  Court's Opinion ¶ 7.

[¶25]  The Court approves the use of the affidavit, recognizing that, pursuant to M.R. Evid. 902(11), it is possible to lay the foundation for admission of a business record, M.R. Evid. 803(6), without a live witness.  Court's Opinion ¶ 20.  I respectfully dissent from that part of the Court's opinion holding that portions of the affidavit and supporting exhibits provided by the Avis claims representative, who was assigned to value the claim and be a custodian of the records related to the claim, do not qualify as business

records pursuant to M.R. Evid. 803(6), and thus may not support award of any damages in this matter.

[¶26] "Business records are hearsay and therefore inadmissible pursuant to M.R. Evid. 802 unless they meet the requirements of the business records exception in M.R. Evid. 803(6)." *KeyBank Nat'l Ass'n v. Estate of Quint*, 2017 ME 237, ¶ 14, 176 A.3d 717. When admission of evidence as a business record is challenged, we review the trial court's foundational findings to support admissibility for clear error and its ultimate determination of admissibility for an abuse of discretion. *JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶ 8, 156 A.3d 727; *Midland Funding LLC v. Walton*, 2017 ME 24, ¶ 18, 155 A.3d 864.

[¶27] M.R. Evid. Rule 803(6) authorizes the admissibility of a business record if

(A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) Making the record was a regular practice of that activity;

(D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that

complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and

(E)   Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[¶28]  The purpose of the business records exception is "to allow the consideration of a business record, without requiring firsthand testimony regarding the recorded facts, by supplying a witness whose knowledge of business practices for production and retention of the record is sufficient to ensure the reliability and trustworthiness of the record." *Beneficial Me. Inc. v. Carter*, 2011 ME 77, ¶ 12, 25 A.3d 96.  Important for this case, "[t]he affiant whose statements are offered to establish the admissibility of a business record . . . need not be an employee of the record's creator." *Id.* ¶ 13.  Thus, "if the records," in this case vehicle valuation records, "were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness." *Id.*

[¶29]   A qualified witness must demonstrate knowledge that the producer of the record used regular business practices to create the record; the receiving business integrated the record into its own records and maintained them through regular business processes; and the receiving

business relied on these records in its day-to-day operation. *See id.* ¶ 14. If the affiant demonstrates the requisite knowledge, records created by another source, applying its regular business practice, will be admissible pursuant to M.R. Evid. 803(6). *Id.*

[¶30] The Avis representative's affidavit of damages bases its information on several sources, not just the J.D. Power report focused on by the Court. There is no dispute that the Avis representative assembled and possessed the business records and that she, herself, calculated the damages amounts asserted by Avis and found by the trial court.

[¶31] The Avis records include a copy of an invoice for $155 for towing charges incurred by Avis. A copy of that invoice is included in the appendix. Other than a generalized hearsay objection, there is no dispute indicated in the record that the towing charge was incurred, that Avis was billed for the charge, that the bill was paid, or that the bill was made a part of Avis's business records in the regular course of Avis's business. Accordingly, the towing charge being part of Avis's business records, there was no apparent basis to object to the trial court's use of the $155 towing charge in calculating the total damages amount.

[¶32]  There also appears to be no dispute about the calculation of the salvage proceeds for the vehicle in the amount of $6,905.

[¶33]  The primary dispute relates to the calculation of the fair market value of the vehicle at the time of the loss, which the claims representative asserted was $20,601.98.  This claim is based on a J.D. Power/Mitchell Vehicle Valuation Report attached as Exhibit B to the Avis representative's affidavit.  This report demonstrates that it is based on a review of documentary evidence, including vehicle valuations for comparable vehicles available for sale in the Las Vegas area.  These valuations are drawn from AutoTrader.com, Cars.com and other sources, including dealer contacts.  Most of the report appears to reflect document-based reviews, necessary considering the very fast time for preparation of the valuation report provided to the Avis claims representative.

[¶34]  The trial court found that the Avis representative reasonably relied on the J.D. Power report in reaching her conclusions regarding the vehicle valuation and that the vehicle valuation report was admissible as part of the Avis business records pursuant to M.R. 803(6) after finding that "the Affidavit provide[d] a sufficient foundation for the reliability and trustworthiness of the report."  The court based that finding on the following

observations: the vehicle valuation report was made within two days of the accident; preparing and maintaining such a report would be in the ordinary course of business for a claims representative at a car-rental company, whose job it is to create a complete and reliable record of the damage to a car; and nothing indicated that the report was prepared in an unusual or untrustworthy way. The court also referenced the inclusion of J.D. Power's valuation methodology in the report, which the court found to be "rigorously objective and mathematical, and transparent about its sources of information."

[¶35] In reality it appears that the valuation report damages number was determined largely by subtracting the undisputed salvage proceeds from the valuations of comparable vehicles offered for sale in the Las Vegas area, identified by an internet review.

[¶36] Burrill has not demonstrated that the trial court clearly erred in its findings. The Avis representative certified that the valuation report was "prepared at the request of and on behalf of Avis" and that the report was "kept within the claim file for this incident; maintained as part of [her] duties as a Claims Examiner for Avis; kept in the regular course of Avis's business and part of its regularly conducted activity; that it was made at or reasonably

soon after the incident; and that the copy is an exact duplicate of the original." Because the trial court did not err, and because the valuation report fits within this Court's articulation of the purpose of the business records exception to the hearsay rule, it was within the court's discretion to admit the affidavit in its entirety. *See Midland Funding LLC*, 2017 ME 24, ¶ 18, 155 A.3d 864.

[¶37] As the trial court stated: "Avis may not be in the vehicle valuation business, but its car rental activities require reliable means of valuating cars," especially in instances where its rental cars sustain damage. The Avis claims examiner appropriately requested a third party in the vehicle valuation business to create a report on the vehicle's valuation prior to damage from an accident. The report was "kept within the claim file for [each] incident" and "kept in the regular course of Avis's business and part of its regularly conducted activity." Although litigation may be possible in some instances of damage to Avis's rental cars, a vehicle valuation report commissioned immediately after a vehicle has been damaged cannot be considered to have been "prepared in anticipation of litigation" by an advocate in the same way that a forensic report prepared by an expert advocating for one party would be. *See State v. Tomah*, 1999 ME 109, ¶ 10, 736 A.2d 1047.

[¶38]   The Court's application of the business records exception to reject all of Avis's claimed damages and direct an award of only nominal damages disregards the damages not addressed in the J.D. Power report, including the apparently undisputed $155 towing charge.   Court's Opinion ¶ 41.   Thus, rather than nominal damages, damages of at least $155 are established without regard to the propriety, or impropriety, of the claims representative's utilizing the J.D. Power report in making her calculations.

[¶39]   As to that report, the trial court correctly found that the Avis representative properly utilized that valuation report, with its method of calculation explicitly documented and based largely on documentary information available in business records, vehicle valuation reports, or on the internet through websites such as AutoTrader.com and Cars.com—material that appears to be regularly and widely utilized in calculating car valuations and car appraisals in today's internet age.

[¶40]   Burrill does not challenge the amount of damages awarded; he only challenges the admission of the claims representative's affidavit in its entirety as a basis for the award.   Because the trial court did not err or abuse its discretion in determining that the affidavit and its attachments satisfied M.R. Evid. 803(6), this Court should affirm the award of damages in the

amount of $15,342.57, or a lesser amount that includes the undisputed towing charge, and the undisputed salvage proceeds deducted from the comparable vehicle valuation based on apparently undisputed document reviews.

[¶41] Burrill also challenges the court's award of attorney fees to Avis. He does not challenge the amount of the award but argues that because this Court should determine that the court erred in granting Avis's motion for partial summary judgment, it should also vacate the attorney fees award as well. Because this Court should affirm the grant of partial summary judgment and the award of damages, it should also affirm the award of attorney fees. *See Estate of Gagnon*, 2016 ME 129, ¶¶ 15-16, 147 A.3d 356. The rental contract provided for attorney fees in the event of a breach. Avis submitted an attorney fee affidavit outlining the charges. It was within the trial court's discretion to grant the attorney fees in the amount included in the attorney fees affidavit.

---

Walter F. McKee, Esq., and Henry E.M. Beck, Esq. (orally), McKee Law, P.A., Augusta, for appellant Darron Burrill

Cheryl J. Cutliffe, Esq. (orally), Basham & Scott, LLC, Brunswick, for appellee Avis Rent A Car System, LLC